887 So.2d 372 (2004)
Nisaratana ("Kitty") RUSSELL and George Russell, Appellants,
v.
KSL HOTEL CORP., a Delaware Corp., d/b/a Doral Golf Resort & Spa, et al., Appellees.
Nos. 3D02-2141, 3D02-1870.
District Court of Appeal of Florida, Third District.
September 22, 2004.
Rehearing Denied December 1, 2004.
*374 Wetherington, Klein & Hubbart and Phillip A. Hubbart; Lauri Waldman Ross, Miami; Rasco Reininger Perez & Esquenazi and Steven R. Reininger, Miami, for appellants.
Gunster, Yoakley & Stewart and Jack J. Aiello (West Palm Beach); Shankman & Westerman and David S. Shankman (Tampa), for appellees.
Before SCHWARTZ, C.J., and COPE and LEVY, JJ.
LEVY, Judge.
Nisaratana Russell and George Russell, the Plaintiffs below, appeal from a Final Judgment. We reverse and remand with directions to reinstate the jury verdict in its entirety. Mrs. Russell and her husband filed an amended complaint against her former employer, KSL Hotel Corporation d/b/a Doral Golf Resort & Spa ("Doral"), alleging hostile work environment sexual harassment; retaliatory discharge (1) for complaining of sexual harassment to Doral management, and (2) for filing a Workers' Compensation claim; negligent retention based upon the continued employment of the Doral employee who allegedly harassed Mrs. Russell; and the husband's loss of consortium.
At trial, Mrs. Russell testified that she worked as a pastry chef at the Doral Golf Resort & Spa from November 1997 until early March 1998. Her immediate supervisor was a woman named Vandee McDaniel, the supervisor of the Doral pastry kitchen. Mrs. Russell testified that on her first day of work, Elman Holder, who was also employed by Doral as a pastry chef, stated that he was expecting Doral to hire a man and expressed his dissatisfaction because Doral hired a woman for the position. Mrs. Russell further testified that *375 when she introduced herself, Holder shook her hand but also pulled her towards him and kissed her on the cheek. According to Mrs. Russell, she protested but Holder laughed at her and made kissing noises. Mrs. Russell testified that she reported this incident to McDaniel.
Mrs. Russell further testified that, over the next few months, Holder frequently came up behind her, made kissing noises, cursed at her, tapped her on the back, and laughed at her. On one occasion, according to Mrs. Russell, he pushed her ear very hard. Mrs. Russell testified that in November or December 1997, the severity of the incidents escalated and that on several occasions, Holder approached her from the rear, rammed his erect penis into her buttocks and whispered in her ear, "Fuck you, Kitty. Fuck you." Mrs. Russell testified that she reported all of these incidents to McDaniel and that McDaniel responded that she would complete a discipline report on Holder. McDaniel never completed such a report. According to McDaniel, Mrs. Russell reported no incidents other than the ear incident and another incident involving a sheet pan.
Mrs. Russell testified that in January 1998, she was inside a pastry kitchen freezer when she was hit in the neck by a plastic water bottle. Mrs. Russell reported the incident to Doral Security, which subsequently informed Human Resources. Diana Allen, the Director of Human Resources, spoke with Mrs. Russell. During this conversation, Mrs. Russell identified Holder as the individual who threw the bottle. Allen asked Mrs. Russell to document in writing the problems she had been having with Holder. After Mrs. Russell completed her account of the incidents, Gina Diaz, the Assistant Director of Human Resources, investigated the complaints and concluded that Mrs. Russell's complaints were unfounded. In the course of the investigation, however, Holder admitted that he touched Mrs. Russell on one occasion. In response, Diaz issued him a written disciplinary warning that directed him not to touch other employees. Diaz also spoke with the pastry kitchen employees about sexual harassment.
At the end of February 1998, Mrs. Russell's husband, George Russell, called Holder to confront him regarding the various incidents. Holder did not respond. The next day, according to Mrs. Russell, when she returned to work Holder said to Didier Schmielowski, another pastry kitchen employee, in a voice loud enough for Mrs. Russell to hear, "How many times should we fuck her? Should we call her husband? How many times can we fuck her?" Mrs. Russell testified that the two men then laughed.
Mrs. Russell further testified that, one hour later, Schmielowski came up behind her and punched her in her back and her elbow. She complained to McDaniel and begged McDaniel to leave work because of the severity of the pain. McDaniel refused and required her to remain at work late to finish inventory. The next morning, the Russells called the police and filed a police report. Mrs. Russell took the next two days off from work. On March 3, 1998, she returned to work and met with Eric Akel, Doral's General Manager. She told him about the incidents involving Holder and Schmielowski and indicated that she needed to see a doctor. Doral arranged for a taxi to take Mrs. Russell to the doctor, where she filed a Workers' Compensation claim. The doctor confirmed that she had contusions on her back and elbow and limited range of motion in her back. He prescribed her medication and had her return to work. Gina Diaz investigated this incident. Because Schmielowski denied the incident and because there were no witnesses to corroborate *376 Mrs. Russell's claim that the injury occurred at work, Diaz put the Workers' Compensation claim into question.
Mrs. Russell returned to work after seeing the doctor. When her shift ended, McDaniel required her to work overtime. Mrs. Russell begged McDaniel to allow her to leave work because of the pain, but McDaniel refused. Mrs. Russell then consulted Executive Sous Chef Klaus Mueller, McDaniel's supervisor. According to Mrs. Russell, Mueller permitted her to go home after her shift and requested that she leave McDaniel a note to that effect. The note was admitted into evidence at trial.
At the end of her shift on March 4, 1998, the following day, Mrs. Russell was called to Human Resources where Allen and McDaniel fired her. Doral's reasoning for the dismissal was that Mrs. Russell "[d]id not work her scheduled shift, [and] left without permission."
After the trial, the jury returned a verdict in which it found for Mrs. Russell on the claims of sexual harassment and retaliatory discharge and for Mr. Russell on the loss of consortium claim. The jury awarded Mrs. Russell $1,516,000 in damages and Mr. Russell $55,000 in damages. The jury found for Doral on the claim of negligent retention.
After the jury verdict, Doral filed a Motion for Judgment Notwithstanding the Verdict or in the Alternative for New Trial in which it also moved for a remittitur. The trial court granted the motion, granting judgment notwithstanding the verdict for Doral on the retaliatory discharge claims, the claim of sexual harassment, and the loss of consortium claim. The trial court also noted that it would, in the event that it was determined on review that judgment notwithstanding the verdict was improvidently entered, grant Doral's alternative motions for new trial and remittitur.
On the sexual harassment claim, the trial court found that Mrs. Russell's testimony was inherently incredible and so thoroughly contradicted by her actions that there was not sufficient evidence to support the jury's determination that she was subjected to conduct of a sexually offensive nature, and that she had complained about it to Doral. On the claim for retaliation for making a sexual harassment complaint, the trial court found that the non-sexual conduct described above did not constitute sexual harassment, and therefore Mrs. Russell's complaints about those matters were not complaints of sexual harassment. The trial court further found that, as to the allegation of the groin attacks, (1) there was not sufficient evidence to establish that any decisionmaker was aware of any complaint about that conduct, and (2) McDaniel, who was Mrs. Russell's immediate supervisor, was not a decisionmaker. As for the claim for retaliation for filing a Workers' Compensation claim, the trial court found that the decisionmakers reasonably believed that Mrs. Russell did not have permission to leave work. Thus, according to the trial court, Mrs. Russell was discharged for a legitimate non-retaliatory reason, and there was not sufficient evidence to show that the reason was a pretext for retaliation. On the loss of consortium claim, the trial court ruled that because the loss of consortium claim was a derivative claim based upon the negligent retention claim, and because the jury found in Doral's favor on that claim, the derivative action must fail. The trial court alternatively found that there was insufficient evidence to conclude that Doral was negligent in its retention of Elman Holder such that the trial court would have directed a verdict on negligent retention even if the jury had found for Mrs. Russell on that claim. Based upon that, according to the trial court, the loss of consortium claim would likewise fail.
*377 As stated above, the trial court explained that it would grant Doral's alternative motion for new trial if it was determined on review that judgment notwithstanding the verdict should not have been entered. In its Final Judgment, the trial court, based upon its discussion of the evidence in granting judgment notwithstanding the verdict, found that the manifest weight of the evidence was contrary to the jury's verdict on each of the claims as to which the jury found in favor of the Russells. Finally, on the alternative motion for remittitur, if the judgment notwithstanding the verdict should not have been entered, the trial court stated that it would order a remittitur to the amount of $75,000. The trial court also entered an order denying the plaintiffs' motion to tax fees and costs as moot. This appeal follows.
When reviewing an order granting a judgment notwithstanding the verdict, we view the evidence in a light most favorable to the non-moving party, resolve all conflicts in the evidence in favor of the non-moving party, and construe every reasonable conclusion which may be drawn from the evidence in favor of the non-moving party. See Stokes v. Ruttger, 610 So.2d 711, 713 (Fla. 4th DCA 1992) (quoting Collins v. School Bd. of Broward County, 471 So.2d 560 (Fla. 4th DCA 1985)); see also Irven v. Dep't of Health and Rehabilitative Servs., 790 So.2d 403, 407 (Fla.2001). A judgment notwithstanding the verdict is appropriate only in situations where there is no evidence upon which a jury could rely in finding for the non-moving party. See Stokes, 610 So.2d at 713.
An order granting a new trial, which the trial court entered in the alternative, is reviewed for an abuse of discretion, and such an order should be affirmed if the appellate court determines that reasonable persons could differ as to the propriety of the action taken by the trial court. See Brown v. Estate of Stuckey, 749 So.2d 490, 497-98 (Fla.1999). Moreover, in granting a motion for a new trial, the trial court must articulate the reasons for doing so in its order. See id.

I. SEXUAL HARASSMENT CLAIM
We conclude that the trial court erred in granting judgment notwithstanding the verdict for Doral on Mrs. Russell's sexual harassment claim because there was evidence to support the jury's verdict. Section 760.10(1)(a), Florida Statutes (2002), which prohibits employers from discriminating against an individual with respect to their employment based upon their gender, is derived from Title VII of the Federal Civil Rights Act. In Green v. Burger King Corp., 728 So.2d 369, 370-71 (Fla. 3d DCA 1999), we explained, "[i]t is well settled that when Florida statutes are adopted from an act of Congress, the Florida Legislature also adopts the construction placed on that statute by the federal courts insofar as that construction is not inharmonious with the spirit and policy of Florida's general legislation of the subject."
In order to establish a claim of "hostile work environment" sexual harassment, Federal courts have held that the plaintiff/employee must allege and eventually prove the following five elements: (1) that the employee belongs to a protected group; (2) that the employee was subjected to unwelcome harassment; (3) that the harassment was based on the employee's gender; (4) that the harassment was severe enough to affect a term, condition, or privilege of employment and to create a discriminatorily abusive working environment; and (5) that the employer knew or should have known of the harassment and *378 failed to intervene. See Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1279-80 (11th Cir.2003) (quoting Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir.2002)); Succar v. Dade County School Board, 229 F.3d 1343, 1344-45 (11th Cir.2000) (citing Henson v. City of Dundee, 682 F.2d 897, 903-05 (11th Cir.1982)).
At issue in the instant case is whether the harassment was directed at Russell because of her gender. See Succar, 229 F.3d at 1345 (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). In its Final Judgment, the trial court concluded that there was insufficient evidence to support the jury verdict because there was no evidence offered at trial to support the occurrence of "certain conduct of a decidedly sexual nature." In reaching its conclusion, it is apparent that the trial court improperly utilized a divide-and-conquer approach to separate the alleged instances of misconduct into sexual conduct and non-sexual conduct. Rather, any harassment or other disparate treatment of an employee that would not occur but for the gender of the employee may, if there is a pattern or pervasiveness in the conduct, constitute "hostile work environment" sexual harassment. Moreover, offensive conduct is not required to include sexual overtones in every instance. See Hall v. Gus Construction Co., Inc., 842 F.2d 1010, 1013 (8th Cir.1988). Thus, when analyzing the sexual harassment issue, the trial court should have guided itself with the rule that sexual harassment conduct includes conduct that is not clearly sexual in nature. See Hall, 842 F.2d at 1014; King v. Auto, Truck, Industrial Parts and Supply, Inc., 21 F.Supp.2d 1370, 1379 (N.D.Fla.1998) ("harassing behavior lacking a sexual explicit content but directed at women and motivated by animus against women satisfies the requirement"). As the Eighth Circuit Court of Appeals stated in Hall,
Intimidation and hostility toward women because they are women can obviously result from conduct other then explicit sexual advances. Title VII "`evinces a Congressional intention to define discrimination in the broadest possible terms. Congress chose neither to enumerate specific discriminatory practices, nor to elucidate in extensor the parameter of such nefarious activities.'"
842 F.2d at 1014 (quoting Firefighters Institute for Racial Equality v. City of St. Louis, 549 F.2d 506, 514 (8th Cir.1977)).
When all of the alleged instances of harassment, whether sexual or non-sexual in nature, are taken into account, the jury's verdict is indeed supported by the evidence. Mrs. Russell testified that on her first day on the job, Holder indicated that he expected Doral to hire a male and voiced his disgust to her that it hired a female instead. Mrs. Russell did not reply, but introduced herself to Holder and extended her hand, and Holder responded by pulling Russell to him and kissing her on the cheek. Although Holder denied that this incident occurred, for the purposes of analyzing the judgment notwithstanding the verdict we are required to resolve this conflict in Mrs. Russell's favor. That being said, if the jury believed that the first-day incident did in fact take place, then it was certainly reasonable for the jury to conclude that this incident was the first link in a long chain of gender harassment which involved both sexual and non-sexual conduct. In other words, construing every reasonable conclusion which may be drawn from the evidence in favor of Mrs. Russell, Holder's actions on Mrs. Russell's first day of employment  which were clearly directed at Mrs. Russell because of her gender  lead to the reasonable *379 conclusion that Holder's subsequent actions were likewise directed at Mrs. Russell because of her gender. Additionally, the Record is replete with instances where Mrs. Russell voiced her complaints regarding Holder's conduct.
In addition to concluding that the trial court erred in granting judgment notwithstanding the verdict for Doral, we also conclude that the trial court abused its discretion in granting, in the alternative, Doral's motion for new trial. Evidently, the trial court premised its analysis on Doral's motion for new trial on the same incorrect assumption as it did in granting judgment notwithstanding the verdict  that conduct which is purely sexual is the only conduct which constitutes sexual harassment. Moreover, the trial court failed to support its conclusion with any reasons which were premised outside of its incorrect assumption that only sexual conduct constitutes sexual harassment. Consequently, we conclude that a new trial on the sexual harassment claim is neither warranted nor supported by the Record.

II. RETALIATORY DISCHARGE CLAIMS
Like the sexual harassment claim, we conclude that the trial court erred in granting judgment notwithstanding the verdict for Doral on Mrs. Russell's two retaliatory discharge claims  for making a sexual harassment complaint to Doral, and for filing a Workers' Compensation claim. First, according to Section 760.10(7), Florida Statutes (2002), it is an unlawful employment practice for an employer to discriminate against any person because that person has made a charge of conduct which is prohibited under Section 760.10. As discussed in Part I of this Opinion, the "charge" of prohibited conduct was Mrs. Russell's charge of sexual harassment as delineated in Section 760.10(1)(a), Florida Statutes (2002). Second, according to Section 440.205, Florida Statutes (2002), an employer cannot discharge an employee in response to an employee's valid claim or attempt to claim Workers' Compensation benefits.
Although two different chapters of the Florida Statutes govern the retaliatory discharge claims, the elements necessary to prove those claims are essentially the same. In order to establish a prima facie retaliation case, the plaintiff must demonstrate the following elements: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal connection between the participation in the protected expression and the adverse action. See Gupta v. Florida Board of Regents, 212 F.3d 571, 587 (11th Cir.2000) (citing Farley v. Nationwide Mut. Ins., 197 F.3d 1322, 1336 (11th Cir.1999)); Raney v. Vinson Guard Service, Inc., 120 F.3d 1192, 1196 (11th Cir.1997) (citing Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 918 (11th Cir.1993)).
In order to satisfy the "causal connection" prong of a prima facie retaliation case, a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action. See Raney, 120 F.3d at 1197 (citing Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir.1993)). Moreover, while awareness of protected expression may be premised upon circumstantial evidence, the plaintiff must show a defendant's awareness with more evidence than mere curious timing coupled with speculative possibilities. See id. at 1197. Once a plaintiff establishes a prima facie case by proving only that the protected activity and the negative employment action are not completely unrelated, the burden then shifts to the defendant to proffer a legitimate reason for the adverse employment *380 action. The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the "legitimate reason" was merely a pretext for the prohibited, retaliatory conduct. See Sierminski v. Transouth Financial Corporation, 216 F.3d 945, 950 (11th Cir.2000).
On the retaliatory discharge counts, the trial court granted judgment notwithstanding the verdict for Doral because (1) on the sexual harassment count, given that Mrs. Russell did not inform anyone other than McDaniel (who the trial court believed not to be a decisionmaker) of any conduct of a sexual nature, there was not sufficient evidence to support the "causal connection" element of the prima facie case for sexual harassment; and (2) on both counts, there was not sufficient evidence to support a jury verdict that the reason given for Mrs. Russell's termination was a pretext for retaliation. We disagree with the trial court on both points.
First, viewing the evidence in the light most favorable to Mrs. Russell, there was evidence to support the "causal connection" element of the prima facie case on the count of retaliatory discharge for making a sexual harassment complaint. As we discussed in Part I of this Opinion, both sexual conduct and non-sexual conduct can be construed as conduct that constitutes sexual harassment. The evidence adduced at trial indicates that even if Mrs. Russell did not inform McDaniel of any conduct of a sexual nature, both McDaniel and Allen  the individuals who discharged Mrs. Russell  were aware of the instances of non-sexual conduct which constitute sexual harassment. Thus, Mrs. Russell established the "causal connection" element to establish the prima facie case of retaliation for a sexual harassment complaint because both McDaniel and Allen were aware of the complaints.
Second, there was also evidence to support the contention that the reason given by Doral for Mrs. Russell's discharge was a pretext for retaliation. The reason given by Doral for Mrs. Russell's discharge was that Mrs. Russell did not work her scheduled shift and left work without permission. Taking the evidence in the light most favorable to Mrs. Russell, it was reasonable for the jury to conclude that Doral's "legitimate reason" for the discharge was merely a pretext for prohibited, retaliatory conduct. The evidence, viewed in the light most favorable to Mrs. Russell, shows that Mueller, who was McDaniel's supervisor, gave Mrs. Russell permission to leave at the end of her scheduled shift and that permission was memorialized in the note that Mrs. Russell left on McDaniel's desk. Despite the fact that Mueller told the Doral staff that he did not give Mrs. Russell permission to leave work at the end of her shift, this conflict in the evidence should have been resolved in Mrs. Russell's favor for the purposes of determining Doral's entitlement to judgment notwithstanding the verdict. Accordingly, the trial court erred in granting judgment notwithstanding the verdict on the retaliatory discharge counts.
We also conclude that the trial court abused its discretion in granting a new trial on the retaliatory discharge counts because, like the sexual harassment count, the trial court provided no reasons for such a conclusion other than referring to the points it made in its flawed analyses on the judgment notwithstanding the verdict issues.

III. LOSS OF CONSORTIUM CLAIM
On Mr. Russell's loss of consortium claim, we hold that Doral waived any inconsistency in the verdict because no objection was made to the defective verdict before the jury was discharged. See Republic *381 Servs. of Fla., L.P. v. Poucher, 851 So.2d 866, 870 (Fla. 1st DCA 2003); J.T.A. Factors, Inc. v. Philcon Servs., Inc., 820 So.2d 367, 371 (Fla. 3d DCA 2002) ("contention that a jury verdict is inconsistent must be raised at the time the verdict is read and before the jury is released in order to allow an opportunity to cure"). Thus, this award must be reinstated.

IV. REMITTITUR
Finally, we conclude that the trial court abused its discretion in granting a remittitur to Doral. See Brown v. Estate of Stuckey, 749 So.2d 490, 498 (Fla.1999). Other than stating that "the damages awarded by the jury were clearly excessive," the trial court provided no justification whatsoever for granting the remittitur or for reducing the award to $75,000. By granting a remittitur without explanation, the trial court has left us to "grasp at straws" in reviewing this portion of the Final Judgment. Wackenhut Corp. v. Canty, 359 So.2d 430, 435 (Fla.1978).
Based upon the foregoing analysis of the Final Judgment, this case is remanded to the trial court with directions to reinstate the jury verdict in its entirety. Moreover, we direct the trial court to entertain the merits of the Plaintiffs' claim for attorney's fees, which was originally denied as moot.
Reversed and remanded with directions.
COPE, J., concurs.
SCHWARTZ, Chief Judge (dissenting in part).
I cannot find that the trial court abused its discretion in determining that the verdict was contrary to the manifest weight of the evidence. Brown v. Estate of Stuckey, 749 So.2d 490 (Fla.1999); see Sheridan v. Forest Hills Public Schools, 247 Mich.App. 611, 637 N.W.2d 536 (2001). Indeed, after a review of the record, I am personally so convinced of the injustice of the plaintiff's cause that I would have voted to reverse the trial judge if she had ruled otherwise. Miller v. First American Bank and Trust, 607 So.2d 483 (Fla. 4th DCA 1992); see Florida Nat'l Bank v. Sherouse, 80 Fla. 405, 86 So. 279 (1920); Newman v. Smith, 77 Fla. 633, 82 So. 236 (1918); Branam v. Aqua-Clear Pools, Inc., 672 So.2d 69 (Fla. 3d DCA 1996); Ziontz v. Ocean Trail Unit Owners Ass'n, Inc., 663 So.2d 1334 (Fla. 4th DCA 1993). Accordingly, I would order a new trial in this case.