885 So.2d 945 (2004)
Shirail NATSON, Appellant,
v.
ECKERD CORPORATION, INC., Appellee.
No. 4D03-4191.
District Court of Appeal of Florida, Fourth District.
October 27, 2004.
*946 Stanley Kiszkiel of Stanley Kiszkiel, P.A., Pembroke Pines, for appellant.
Susan L. Dolin of Rothstein, Rosenfeldt, Dolin & Pancier, P.A., Fort Lauderdale, for appellee.
WARNER, J.
Appellant, Shirail Natson, appeals a directed verdict in favor of Eckerd Corporation on her claim for sexual harassment in violation of the Florida Civil Rights Act, section 760.10, Florida Statutes (2002). The court granted a directed verdict based upon Eckerd's affirmative defense that it exercised reasonable care to prevent and promptly correct sexual harassment and that Natson unreasonably failed to take advantage of preventative opportunities. We hold that the court erred in directing a verdict because the evidence taken in a light most favorable to Natson would defeat the affirmative defense. We therefore reverse.
Natson was employed as a photo lab technician for an Eckerd Store. Her regular supervisor was Maxime Nicolas, but Jennifer Woods was Nicolas's co-supervisor of the photo lab. In the joint pre-trial stipulation, Eckerd admitted that Woods was a supervisor. Howard Young was the overall photo lab manager and was the supervisor of both Nicolas and Woods.
About a month after Natson began working at Eckerd, Nicolas started touching her inappropriately. Natson told him to keep his hands to himself, but the conduct continued. That same month, she reported the conduct to Woods. Natson testified that she did not tell Woods not to tell anyone about the situation. Woods told her that she would "take care of it." Woods admitted that she talked to Natson about Nicolas's conduct, although she recalls Natson telling her only that Nicolas made her uncomfortable. Woods did not tell anyone about her conversations with Natson and no action was taken.
*947 Natson testified that after her conversation with Woods, the touching and verbal harassment became worse. After another month she went back to Woods and asked her if she took care of the problem. Woods said she had not but that she would talk to the district manager, Patte Neville, the next day. That same day, Nicolas took an opportunity to rub Natson's nipple while handing her a paper. At that point Natson decided to leave and walked out of the store.
Natson returned the next day and spoke to the store manager, Daryl Turner. She informed him that Nicolas had been touching her and making comments. She told Turner that she had wanted to tell him, but every time she went back to his office, Nicolas followed her. She told Turner that she had informed Woods about her problem, and Turner said that Woods should have reported it to him so that something could be done. Turner then called in the Human Resources Director, Marilyn Hannan, who conducted an investigation during which she interviewed Natson and contacted Woods. Woods told Hannan that Natson had complained to her on several occasions about Nicolas touching her. Natson was eventually terminated by Eckerd and brought this claim for sexual harassment. At the close of all of the evidence both parties moved for directed verdicts. The court granted Eckerd's motion for directed verdict on its affirmative defense that Natson failed to follow the company's policy on sexual harassment. This appeal follows.
A motion for directed verdict should be granted only where the evidence and reasonable inferences deduced from it, taken in the light most favorable to the non-moving party, could not sustain a verdict for the party moved against. See Ortlieb v. Butts, 849 So.2d 1165, 1168 (Fla. 4th DCA 2003); Tenny v. Allen, 858 So.2d 1192, 1195 (Fla. 5th DCA 2003). Where there is conflicting evidence or different reasonable inferences may be drawn from the evidence, then the factual issues must be submitted to the jury. Tenny, 858 So.2d at 1196.
An employee may assert a claim for sexual harassment under section 760.10, Florida Statutes (2002). "The Florida Civil Rights Act is patterned after Title VII, and therefore federal case law regarding Title VII is applicable." Castleberry v. Edward M. Chadbourne, Inc., 810 So.2d 1028, 1030 n. 3 (Fla. 1st DCA 2002). Specifically, section 760.10, Florida Statutes (2002), provides:
(1) It is an unlawful employment practice for an employer:
(a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status.
To establish a prima facie case of hostile work environment sexual harassment, a plaintiff must establish: (1) he or she is a member of a protected group; (2) he or she was the subject of unwelcome sexual harassment; (3) the harassment occurred because of his or her sex; and (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of his or her employment. Breda v. Wolf Camera & Video, 222 F.3d 886, 889, n. 3 (11th Cir.2000). Additionally, "the employee must show that the employer knew or should have known of the harassment and failed to take remedial action." Castleberry, 810 So.2d at 1029-30. Eckerd does not dispute that Natson proved a prima facie case of sexual harassment.
Eckerd asserted as an affirmative defense to Natson's sexual harassment claim its policy on sexual harassment, which it says Natson did not follow. It *948 cites Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), in which the Supreme Court said:
An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise ... No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.
Faragher, 524 U.S. at 807-08, 118 S.Ct. 2275 (citations omitted). The trial court ruled as a matter of law that Natson did not suffer a tangible employment action as her termination was not the result of the sexual harassment, so the affirmative defense is available to Eckerd. The court directed a verdict in Eckerd's favor on the affirmative defense because (1) Eckerd exercised reasonable care to prevent sexual harassment by promulgating a reasonable policy, and (2) Natson unreasonably failed to take advantage of the preventative or corrective opportunities provided in the policy. The trial court found that Natson did not report to the appropriate designated person.
Eckerd claims that its "official" sexual harassment policy is contained in its Policies and Procedures Manual. In its manual, an employee is required to report sexual harassment to his or her supervisor. If the supervisor is the harasser, then the employee should report the harassment to the person to whom his or her supervisor reports or the employee may contact the Human Resources Department. This Policies and Procedures Manual is not provided to employees. Instead, employees receive the Associate's Handbook, which tells an employee to report sexual harassment to "management and the appropriate human resource representative. If you feel uncomfortable about approaching someone about the matter locally, you can notify the Harassment Hotline at the Support Center." A phone number is included. Finally, in the store's employee break room a poster informs the employees of Eckerd's "Sexual Harassment Policy." The poster provides that any employee who believes that he or she has been subjected to sexual harassment should bring it to the attention "of their manager, Human Resource representative, or any supervisor with whom they feel comfortable... Any supervisor who becomes aware of possible sexual harassment should immediately notify Human Resources."
Although Eckerd contends that its "official" sexual harassment policy is contained in its Policies and Procedures Manual, which requires reporting to the employee's supervisor or the supervisor's supervisor, this version was not distributed to the employees and therefore could not, as a matter of law, establish the first prong of the affirmative defense. See Faragher, 524 U.S. at 808, 118 S.Ct. 2275. Moreover, it is apparent that each of the three versions of the policy, only two of which are published to the employees, permit the employee to report sexual harassment to a different set of persons. The official policy requires reporting to the employee's immediate supervisor, the supervisor's supervisor, or Human Resources. The Associate's Handbook tells employees to report harassment to "management," and the *949 break room poster tells employees to report the behavior to their manager, Human Resources, or "any supervisor with whom they feel comfortable."
This case is similar to Frederick v. Sprint/United Management Co., 246 F.3d 1305 (11th Cir.2001). Much like Eckerd, Sprint promulgated three different versions of its sexual harassment policy, each of which permitted the employee to report harassment to different persons. The Eleventh Circuit held that a question of fact existed as to whether Sprint had an effective sexual harassment policy that would meet the first prong of Faragher. Similarly, it is for the jury to determine which version of the policy was the one that Natson should have followed.
Secondly, under the two policies promulgated to the employees through the handbook and break room poster, the evidence taken in the light most favorable to Natson shows that she reported the incidents to an appropriate person. Eckerd admitted in its joint pretrial stipulation that Woods was a supervisor. Nicolas was Natson's immediate supervisor, and Howard Young was Nicolas's supervisor. It is within the jury's province to infer that Natson reported the harassment to Woods instead of Young, because as a woman she felt more comfortable reporting to Woods. As a supervisor, Woods could also be classified as "management." Therefore, there was evidence presented that negated the second prong of the Faragher affirmative defense. Eckerd's own policy, published through the break room poster, required Woods, not Natson, to report the matter to Human Resources. See Breda, 222 F.3d at 890 (stating that employee who follows the clear and published policy of reporting harassment to the appropriate person need not be concerned with whether he or she pursued the complaint far enough up the company ladder; reporting to an appropriate person is sufficient notice to company).
Eckerd maintains that Natson expressly failed to avail herself of the opportunity to complain because one evening at work when Howard Young, Natson's supervisor, asked her how she was doing, she responded, "Pretty okay" and did not reveal to him anything about the harassment. It likens her response to the facts of Scrivner v. Socorro Independent School District, 169 F.3d 969 (5th Cir.1999). There, a teacher who was allegedly being sexually harassed by the school principal was interviewed by a school investigator regarding the conduct of the principal in connection with anonymous tips. During the interview, the teacher specifically denied that the principal was sexually harassing her and did not report the alleged harassment for the first ten months it occurred. The court held that the school district established its affirmative defense because the teacher lied and intentionally misled investigators when given the opportunity to reveal the harassment.
We hardly think that Natson's reply to such a casual inquiry of how she was doing, which seems more like social pleasantries than a specific investigation, is sufficient to show that Natson unreasonably failed to avail herself of corrective opportunities. Unlike Scrivner, no investigation was ongoing, and Young did not pose any specific question respecting harassment. While Eckerd may argue to the jury that Natson should have taken the opportunity to report the harassment when Young exchanged these pleasantries, this does not mandate a directed verdict in its favor.
For these reasons, we reverse the final judgment and remand for a new trial.
SHAHOOD and MAY, JJ., concur.