SHEPHERD, J.
This is an appeal and a cross-appeal from a final judgment on a jury verdict awarding the appellant, Sean St. Louis, $72,241 in lost wages and $2.5 million in compensatory damages on state law racial discrimination and retaliation claims, brought by him against his former employer, Florida International University (FIU), the appellee here. Because we find St. Louis failed to establish a prima facie case for both racial discrimination and retaliation, we reverse the final judgment entered on the jury verdict. Our decision makes it unnecessary to consider any other issues raised on appeal or cross-appeal.

FACTUAL AND PROCEDURAL BACKGROUND

St. Louis, a Trinidadian man, was hired in November 1997 as the Assistant Controller (later promoted to Associate Controller) of the Contracts and Grants De *457 partment (C & G Department) at FIU. As head of the department, St. Louis was responsible for overseeing compliance with federal accounting regulations for federal grants awarded to FIU faculty members. St. Louis asserts he was a good employee and received praise for his work at FIU. FIU contends St. Louis’ department was dysfunctional to the point that the research faculty he was hired to serve was frustrated not only in their personal dealings with him, but also with the level of service they received from the C & G Department as a whole.
In 2002, the federal government announced an audit of the accounting for the research grants awarded to faculty members in FIU’s Hemispheric Center for Environmental Technology (HCET). The government proposed to fine FIU $25 million for violations of federal accounting regulations. In late 2003, St. Louis temporarily was reassigned to assist with FIU’s response to the federal government’s claim. FIU ultimately was able to reduce the fine to $11.5 million in a settlement.
In January 2004, FIU President Modesto A. Maidique announced that as a consequence of the HCET audit and faculty dissatisfaction, FIU was placing new senior officers in all three areas critical to federal regulatory grant compliance. One of these new officials, Dr. George Dam-bach, Vice President of Research, was mandated to reorganize FIU’s research grant structure. When St. Louis sought to return to his old job, he learned that due to the reorganization, the C & G Department had been merged into the Department of Sponsored Research Administration (DSRT) — subsequently renamed Post-Award — which reported directly to Dr. Dambach. On October 1, 2004, FIU informed St. Louis his position as Associate Controller for the C & G Department would be abolished effective March 31, 2005.
In conjunction with this organizational restructuring, Dr. Dambach developed new management protocols for post-award accounting and regulatory compliance for FIU’s federal grants. Instead of focusing on discrete tasks, financial managers in the new Post-Award Department now were called upon to manage all of the post-award issues of a specific faculty member or College, regardless of the type of federal grant involved. Because the job skills and responsibilities for the new positions were substantially different than the old C & G positions, FIU’s Human Resources Department recommended the former C & G employees be required to apply for the new positions and follow procedures like all other applicants. Based upon a similar analysis, FIU’s Human Resources Department recommended that the head of the newly created Post-Award Department, the Director Post-Award, likewise should be opened to all applicants on an equal basis. Dr. Dambach accepted both recommendations.
In October 2004, St. Louis applied for the Director Post-Award position. The search committee selected St. Louis and several other candidates for a preliminary phone interview. Throughout his phone interview, according to members of the committee, St. Louis failed to provide a ■vision for the Department’s future and failed to show a willingness to embrace the changes that were being sought in the new department. When asked what he would do differently in the new position, St. Louis responded he saw no difference between his old position and the new one. St. Louis stated he simply needed some “muscle” from FIU to force the faculty to cooperate and support his initiatives. The search committee did not recommend St. Louis for the position, nor did the commit *458 tee recommend any of the other interviewees for the position. The position remained vacant for the next nineteen months. In the meanwhile, an Associate Vice President of Research, under the direction of Dr. Dambach, assumed many of the Director Post-Award’s responsibilities.
The Director Post-Award position eventually was filled by Aida Reus in May 2006. Reus had been hired in March 2005 as a Grants Financial Manager in the Post-Award Department, one of the new positions created by the reorganization. For the next thirteen months, she was one of three Grants Financial Managers in the department, and was responsible for supervising two assistant managers on her team. In May 2006, based upon her overall work performance in the Post-Award Department, Reus was promoted to Director Post-Award.
St. Louis first complained of racial discrimination in October 2004, when he was told his department was being eliminated. He testified he made his complaints to two individuals, Paul Michaud, the Assistant Vice President of Human Resources, and Harlan Sands, one of his supervisors at HCET. Importantly, Michaud was not part of the Director Post-Award search committee. Although Sands was part of the search committee, he recused himself from all discussions and decisions regarding St. Louis, and did not participate in St. Louis’ interview. After St. Louis was not recommended for the new position, he found other employment outside FIU and resigned before his termination date. In his resignation letter to Michaud, dated December 8, 2004, St. Louis expressed his belief that his termination was provoked by racial animus. However, there is no record evidence regarding any racially derogatory remarks about St. Louis’ race, nor did St. Louis attribute any racial remarks to Dr. Dambach or any other FIU representative.
St. Louis filed suit against FIU, alleging racial discrimination for eliminating his position and retaliation for expressing such sentiments by not being recommended for the new Director Post-Award position. At trial, a jury returned a verdict in St. Louis’ favor and awarded him $72,241 in lost wages and benefits and $2.5 million in compensatory damages. FIU subsequently filed a Renewed Motion for Directed Verdict, a Motion for New Trial or, in the alternative, a Motion for Remittitur. The trial court denied all of these motions, which FIU now appeals. FIU also filed a Motion to Conform Judgment to Statutory Caps, limiting St. Louis’ award to $200,000, based on sections 760.11(5) and 768.28(5), Florida Statutes (2008). The trial court granted FIU’s motion, which St. Louis appeals.

RACIAL DISCRIMINATION CLAIM

The Florida Civil Rights Act of 1992 (FCRA) protects employees from racial discrimination in the workplace, and provides, in part, “It is an unlawful employment practice for an employer to discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual ... because of such individual’s race ....”§ 760.10(l)(a), Fla. Stat. (2004). It is well settled that Florida courts follow the three-part framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for establishing a discrimination claim based on disparate treatment in the workplace through circumstantial evidence. See e.g., Valenzuela v. GlobeGround N. Am., LLC, 18 So.3d 17, 21-22 (Fla. 3d DCA 2009); Scholz v. RDV Sports, Inc., 710 So.2d 618, 624 (Fla. 5th DCA 1998). Under the McDonnell Douglas framework, a plaintiff first must establish, by a pre *459 ponderance of the evidence, a prima facie case of discrimination. Valenzuela, 18 So.3d at 22. If a prima facie case is raised successfully, a presumption of discrimination against the defendant arises. Id.
Once a presumption of discrimination against the defendant is shown, the burden of proof shifts to the employer to present a “legitimate, non-discriminatory reason” for the employment action. Id. If the employer meets its burden of offering non-discriminatory reasons for its employment action, then the presumption of discrimination no longer exists, and the employee must prove the employer’s legitimate reasons for discharge were a pretext for discrimination. Id.
Beginning with step one of the McDonnell Douglas framework, to establish a prima facie case of disparate treatment based on racial discrimination, St. Louis must show: (1) the employee belongs to a protected class; (2) the employee applied and was qualified for the position; (3) the employee, despite his qualifications, was rejected; and (4) similarly situated employees outside the employee’s protected class were treated more favorably. Id.; see also McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817. Demonstrating a prima facie case is not difficult, but rather only requires the plaintiff to establish “facts adequate to permit an inference of discrimination.” Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir.1997). However, in this case, St. Louis failed to satisfy the fourth element, that similarly situated employees outside his protected class were treated more favorably.
To establish this element, St. Louis claims Aida Reus, a person outside his protected class, was treated more favorably by assuming St. Louis’ role as director. However, the evidence presented contradicts this assertion. When Reus was hired in April 2005, she was not hired as Director Post-Award, but rather as one of three Grants Financial Managers, supervising two Post-Award Department employees. St. Louis nevertheless contends that while her official title was different, her job responsibilities were equivalent to those of the position of Director Post-Award. St. Louis’ assertion is incorrect. Although Reus’ position encompassed managerial duties, she was not responsible for overseeing the entire Post-Award Department, as was required of the Director Post-Award.
Finally, St. Louis argues that because Reus eventually was promoted to Director Post-Award in May 2006, this qualifies her as a similarly situated employee outside the protected class for purposes of satisfying the fourth element of his prima facie case. We disagree. Evidence of a person outside the employee’s protected class being hired for the same position approximately nineteen months after St. Louis applied for the position and approximately eighteen months after St. Louis resigned from FIU does not, without more, create an inference of discriminatory intent. See Kelly v. Caldera, No. 98-0753-CB-M, 2000 WL 284263, at *3 (S.D.Ala. Feb.28, 2000) (“[EJvidence that the Corps created a new position eighteen months after a reorganization in which jobs were eliminated does not create an inference that its decisions were motivated by discriminatory intent.”).
Not every reorganization results in discrimination. In this case, St. Louis failed to establish a prima facie case of racial discrimination. As we have stated, “[a] jury’s verdict can not rest on a mere probability or guess, and we cannot affirm a verdict where it has no rational predicate in the evidence.” Food Fair Stores of Fla. v. Sommer, 111 So.2d 743, 746 (Fla. 3d DCA 1959) (citing Golden v. Morris, 55 *460 So.2d 714, 715 (Fla.1951), and Jacksonville Coach Co. v. Early, 78 So.2d 369, 371 (Fla.1955)). FIU’s Motion for Directed Verdict on this claim should have been granted.

RETALIATION CLAIM

“It is an unlawful employment practice for an employer ... to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under [section 760.10].” § 760.10(7), Fla. Stat. (2004). Similar to the burden shifting analysis found in a race discrimination claim, in a retaliation claim the employee first must prove a prima facie case of retaliation. See Russell v. KSL Hotel Corp., 887 So.2d 372, 379 (Fla. 3d DCA 2004). If a prima facie case is proven, the burden shifts to the employer to proffer a legitimate reason for the adverse action. Id. The burden then shifts back to the employee to show the legitimate reason proffered was a pretext for the prohibited retaliatory conduct. Id. To establish a prima facie case for retaliation, the employee must show that: (1) he engaged in a statutorily protected expression; (2) there was an adverse employment action; and (3) there was a causal connection between the participation in the protected expression and the adverse action. Id.; see also Blizzard v. Appliance Direct, Inc., 16 So.3d 922, 926 (Fla. 5th DCA 2009).
Just as St. Louis failed to adduce sufficient proof to create an inference of a prima facie case of racial discrimination, he likewise failed to prove a prima facie case of retaliation. On this claim, St. Louis asserts he was not recommended by the search committee for the position of Director Post-Award based upon his allegation that he was being terminated from his position as Associate Controller in charge of the C & G Department because of racial animus, which he made to FIU Assistant Vice President of Human Resources Paul Michaud and HCET supervisor Harlan Sands in October 2004, before the committee considered his application.
Although St. Louis so testified, thereby engaging in a statutorily protected activity, he failed to adduce any evidence that the search committee knew of the allegations and therefore had cause to retaliate. St. Louis testified he made the allegation only to Michaud and Sands. Mi-chaud was not a member of the search committee and did not participate in the process. Although Sands was a member of the search committee, he recused himself from any discussions or decisions regarding St. Louis because St. Louis worked for Sands while at HCET. No evidence exists Sands expressed any opinion of St. Louis or provided any knowledge of St. Louis’ claim of racial discrimination to the search committee.
In order to satisfy the ‘causal connection’ prong of a prima facie retaliation case, a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action. Moreover, while awareness of protected expression may be premised upon circumstantial evidence, the plaintiff must show a defendant’s awareness with more evidence than mere curious timing coupled with speculative possibilities.
Russell, 887 So.2d at 379. There is no evidence the search committee was aware St. Louis had complained of racial discrimination. St. Louis’ retaliation claim fails on this element of his prima facie case. Therefore, FIU’s motion for directed verdict on St. Louis’ claim for retaliation likewise should have been granted.

*461
CONCLUSION

For the foregoing reasons, we reverse the trial court’s final judgment based upon the jury verdict in this case, with the direction that judgment be entered for FIU. All other issues raised by the parties are rendered moot by this decision.
Reversed and remanded for proceedings in compliance herewith.