851 So.2d 866 (2003)
REPUBLIC SERVICES OF FLORIDA, L.P., f/k/a Southland Waste Systems of Jax., Inc., Appellant,
v.
Judith POUCHER, Appellee.
No. 1D02-2657.
District Court of Appeal of Florida, First District.
August 12, 2003.
*867 Richard A. Sherman, of Richard A. Sherman, P.A., Ft. Lauderdale; and Dale Hightower, of Hightower & Weiser, P.A., Miami, for Appellant.
Hugh Cotney, of Hugh Cotney, P.A.; and C. Holt Smith, Jacksonville, for Appellee.
BROWNING, J.
Republic Services of South Florida, L.P. (Republic Services), the defendant in the *868 lower tribunal,[1] appeals an order granting in part a motion for additur filed by the appellee/plaintiff, Judith Poucher. Republic Services contends that the trial court erred as a matter of law in finding the jury's verdict inconsistent; and in granting the motion for additur in the amount of $20,000.00 for future medical expenses and in the amount of $963.97 for past medical expenses. Concluding that the granting of the motion for additur constitutes a clear abuse of discretion, we reverse the order and remand with instructions to the trial court to reinstate the jury's verdict.
Poucher filed a negligence action against Republic Services alleging that she had suffered serious, permanent personal injuries on August 3, 1999, when an employee of Republic Services (then known as Southland Waste Systems of Jax., Inc.), without a warning, tossed aside (at shoulder height) an empty recycling bin, which struck Poucher on the right chin and jaw as she proceeded around the driver's side of the stationary recycling truck during a neighborhood walk. Poucher claimed that the blow had stunned her and caused tremendous pain on the right side of her face and a buzzing sound in her left ear. It is undisputed that Republic Services had a safety rule prohibiting throwing or tossing recycling bins into yards, and the defense conceded some degree of negligence. However, Republic Services denied that the recycling bin incident caused Poucher's injuries. The driver of the recycling truck, Robert Hutchinson, testified that after Poucher was struck by the bin, he inquired about her condition, and Poucher said she was fine and indicated the driver did not need to call his supervisor.
Years before the recycling bin incident, Poucher was diagnosed as having an injury to her temporomandibular joint (TMJ). At the trial, Poucher's attorney argued that the recycling bin incident had caused a permanent injury that aggravated Poucher's TMJ condition, narrowed her mouth opening, required her to use a Therabite device (to stretch the mouth), and resulted in constant pain comparable to a toothache. On May 30, 2001, i.e., after the recycling bin incident but before the trial, Poucher felt sick, fainted in the bathroom, and landed on her face while not wearing her bite guard, bruising her jaw and sustaining bite marks on her lips and inside her mouth. The defense contended that any worsening of Poucher's condition after the recycling bin incident is entirely or primarily the result of her progressively worsening, pre-existing TMJ condition or her fall.
Poucher was in her early 50s at the time of the trial. She has a Ph.D. and taught freshman English at the community college. She claimed $1,927.97 in past medical expenses. Given the mortality tables suggesting her life expectancy was 27 more years, she sought an award of $15,000.00-$40,000.00 for future medical expenses. Her counsel asserted Poucher's claim of $10,000.00-$20,000.00 for past pain and suffering and at least $100,000.00 for future pain and suffering.
The jury returned a verdict finding that Republic Services' negligence was the legal cause of Poucher's damages and that Poucher was not comparatively negligent. For past medical expenses, the jury awarded $964.00, or one-half the amount claimed. The jury awarded zero for future medical expenses. The jury awarded $1.000.00 and $3,000.00, respectively, for past and future pain and suffering, which could include disability, physical impairment, disfigurement, mental anguish, inconvenience, *869 or loss of capacity for enjoyment of life. The trial court entered a final judgment in accordance with the verdict.
Poucher filed a motion for additur and a motion for new trial as to damages only. She alleged that the award for past medical expenses and the zero award for future medical expenses are contrary to the evidence. She argued that the awards for past and future pain and suffering and other non-economic damages are grossly inadequate and are totally inconsistent with the jury's finding Republic Services liable. While acknowledging her pre-existing TMJ condition, Poucher asserted that her pain increased and became constant and permanent, that her impairment rating was 10% of the body as a whole, and that her mouth opening was permanently limited to no more than 33 mm. (compared to a normal mouth opening of 40-50 mm. for someone Poucher's age) after the recycling bin incident.
Republic Services filed a response contending that as Poucher's TMJ had progressively worsened and had not been aggravated by the recycling bin incident, the verdict is reasonable because the jury attributed most of Poucher's problems and her need for treatment and medication to causes other than being struck by the recycling bin; and because the jury considered the problems resulting from the recycling bin incident to be only temporary. Republic Services opposed Poucher's motions to tax costs and for a new trial on damages. No objection to the verdict as being inconsistent was made before the jury was discharged. After a motion hearing, the trial court granted an additur of $20,000.00 for future medical damages and an additional $963.97 for past medical damages (which, with the jury's award, totaled the $1,927.97 claimed for past medical expenses). An additur was denied as to past and future non-economic damages such as pain and suffering. The court found an inconsistency in the jury's verdict allowing an award for future pain and suffering but awarding zero for future medical expenses. The motion to tax costs was granted.

Issue of Inconsistent Verdict
"A verdict is clothed with a presumption of regularity and is not to be disturbed if supported by the evidence." Sweet Paper Sales Corp. v. Feldman, 603 So.2d 109, 110 (Fla. 3d DCA 1992) (on motion for clarification). The Fourth District Court has characterized an inconsistent verdict as follows:
Where the findings of a jury's verdict in two or more respects are findings with respect to a definite fact material to the judgment such that both cannot be true and therefore stand at the same time, they are in fatal conflict. In such circumstances, contradictory findings mutually destroy each other and result in no valid verdict, and a trial court's judgment based thereupon is erroneous.
Crawford v. Dimicco, 216 So.2d 769, 771 (Fla. 4th DCA 1968). As the alleged error is one of law, it is subject to a de novo standard of review. Republic Services argues, first, that there is no inconsistency in the verdict, for the evidence supports a reasonable conclusion that although Poucher might experience some future pain and suffering, etc., resulting from the recycling bin incident, her future need for medical treatment or medical expenses, if any, will arise solely from other causes. Cf. Allstate Ins. Co. v. Manasse, 707 So.2d 1110 (Fla.1998) (finding no inconsistency in jury's verdict, where insured plaintiff's permanent injury and award of future medical expenses did not entitle her to future non-economic damages from uninsured motorist carrier; jury reasonably could have concluded such palliative care was reasonable but that future pain and *870 suffering either was not proven by greater weight of evidence or was not compensable because continuing complaints of pain arose from reasons unrelated to accident). Second, Republic Services asserts that any such claim was waived because it was not raised before the jury was discharged and it is not "of a fundamental nature." N. Am. Catamaran Racing Ass'n, Inc. v. McCollister, 480 So.2d 669, 671 (Fla. 5th DCA 1985). Cf. Sweet Paper Sales, 603 So.2d at 110 (finding that plaintiff's failure to object before jury's discharge to verdict on ground of inconsistency, i.e., an issue not of constitutional or fundamental character, constituted waiver of issue for appellate review); and Moorman v. Am. Safety Equip., 594 So.2d 795 (Fla. 4th DCA) (finding, despite claim that error was fundamental, that issue of alleged inconsistent jury verdict was waived by seat belt manufacturer in products liability action, where no objection was made before jury was discharged), rev. den., 606 So.2d 1164 (Fla. 1992). Republic Services is correct in both respects.

Granting an Additur
The parties agree that the standard of review of an order granting additur is "clear abuse of discretion." Basel v. McFarland & Sons, Inc., 815 So.2d 687, 696 (Fla. 5th DCA 2002); Aurbach v. Gallina, 721 So.2d 756 (Fla. 4th DCA 1998). Section 768.74(1), Florida Statutes (1999), states:
(1) In any action to which this part applies wherein the trier of fact determines that liability exists on the part of the defendant and a verdict is rendered which awards money damages to the plaintiff, it shall be the responsibility of the court, upon proper motion, to review the amount of such award to determine if such amount is excessive or inadequate in light of the facts and circumstances which were presented to the trier of fact.
Subsection (2) of the same statute provides that "[i]f the court finds that the amount awarded is excessive or inadequate, it shall order a remittitur or additur, as the case may be." Subsection (5) provides that in determining whether an award is inadequate given the facts and circumstances presented to the jury, and in determining the amount of the award's inadequacy, the trial court is to consider the following criteria, inter alia:
(b) Whether it appears that the trier of fact ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages recoverable;
* * *
(d) Whether the amount awarded bears a reasonable relation to the amount of damages proved and the injury suffered; and
(e) Whether the amount awarded is supported by the evidence and is such that it could be adduced in a logical manner by reasonable persons.
"Section 768.74 did not alter the `longstanding principles' governing a trial court's deference to a jury's assessment of damages." Aurbach, 721 So.2d at 758, quoting Poole v. Veterans Auto Sales & Leasing Co., Inc., 668 So.2d 189, 191 (Fla.1996). In determining whether additur is an appropriate remedy, the trial court cannot "sit as a seventh juror with veto power." Laskey v. Smith, 239 So.2d 13, 14 (Fla.1970); Aurbach, 721 So.2d at 758.
The trial court's written order did not set forth the basis for granting an additur. At the post-trial hearing on the motion, however, the judge announced that he had read Easkold v. Rhodes, 614 *871 So.2d 495 (Fla.1993), which he interpreted as holding that a doctor's testimony is binding on the jury in the absence of impeachment or conflicting testimony or an incomplete history given to the examining doctor. The judge then stated his intent to grant the additur. Having reviewed the language in Easkold and its progeny, we believe the trial court construed the rule of Easkold too narrowly and contrary to Florida law. A jury is free to reject even uncontradicted expert witness testimony. Id. at 497; Shaw v. Puleo, 159 So.2d 641 (Fla.1964); United States Fidelity & Guar. Co. v. Perez, 622 So.2d 486 (Fla. 3d DCA 1993); State Farm Mut. Auto. Ins. Co. v. Garcia, 621 So.2d 475 (Fla. 4th DCA 1993); Wynn v. Muffs, 617 So.2d 794 (Fla. 1st DCA 1993). Likewise, a jury is entitled to weigh the credibility of a medical expert and a lay witness, to reject the expert testimony and base its verdict solely on conflicting lay testimony, or to reject the plaintiff's claim entirely. Weygant v. Fort Myers Lincoln Mercury, Inc., 640 So.2d 1092 (Fla.1994); McCown v. Estate of Seidell, 831 So.2d 218 (Fla. 5th DCA 2002); Hanono v. Murphy, 723 So.2d 892 (Fla. 3d DCA 1998); Evans v. State, 603 So.2d 15 (Fla. 5th DCA 1992); Laberge v. Vancleave, 534 So.2d 1176 (Fla. 5th DCA 1988). After carefully reviewing the record, we conclude that the jury could have reached its verdict in a manner consistent with the evidence adduced. Under these circumstances, we are compelled to reverse. See Airstar, Inc. v. Gubbins, 668 So.2d 311 (Fla. 4th DCA 1996) (reversing additur where competent substantial evidence supported jury's verdict finding motorist did not sustain permanent injury in auto accident).
The recycling bin incident occurred in August 1999. Dr. Gaskins, who practiced general dentistry, testified that he had been Poucher's dentist since 1991 and had treated her ongoing TMJ condition since 1995. He opined that most of Poucher's TMJ damage appeared to be muscular, not joint-related, and that she experienced both good and bad days. Evidence was adduced that stress could cause Poucher's TMJ symptoms to flare up, and that her teaching activities (e.g., grading students' papers) and a hysterectomy (shortly before the recycling bin incident) were among the sources of stress in her life. Poucher has a longstanding history of nocturnal bruxing (teeth grinding) and clinching, which can cause TMJ problems and spasms. She had similar complaints of muscle spasms before and after the recycling bin incident. Although Poucher had reported only periodic pain during flare-ups before the recycling bin incident, the reports of constant pain afterwards were based solely on her subjective complaints, and stress tended to increase her pain. On the date of the recycling bin incident, her mouth opening (maximum) was limited to 26 mm., and she had a swollen face. Nine weeks later, her maximum mouth opening was 31-32 mm., but in late June 2000, it was only 25 mm. Dr. Gaskins and Dr. Hartley (an oral and maxillofacial surgeon who treated Poucher) testified that when dental texts state that 53-58 mm. is the average mouth opening range for a woman of Poucher's age, the average would not include someone with a TMJ condition. These two witnesses agreed it is possible that someone with TMJ could have a limited mouth opening of 30-mm. Indeed, it is possible that Poucher had a 30 mm. mouth opening before the recycling bin incident. If that is so, then, according to Dr. Gaskins, her current mouth opening of 30 mm. is normal for her and would not indicate a permanent injury from the recycling bin incident. Significantly, Poucher's mouth opening was never measured prior to the recycling bin incident.
*872 Dr. Hartley testified that the TMJ is responsible for moving the jaw forward and acts as a hinge. A TMJ injury can be either to the joint or to the muscle. He opined that it is not unusual for a patient who has a soft bite guard and hard bite guard to have a limited mouth opening. In August 2000, Poucher's mouth opening was 30 mm., which is wider than the measurement in the original examination. She complained of left angle pain and muscle tightness, especially when under stress. Dr. Hartley testified that many patients release stress through the facial muscles; clinching or grinding the teeth causes already sore muscles to tighten. Dr. Hartley opined that Poucher's injury is more muscle-related. He noted having received a report that in May 2001, Poucher passed out and fell on her face, striking her jaw on the floor while not wearing a mouth guard and causing bite marks and bruising. Dr. Hartley and Dr. Gaskins both testified that the fall could have jammed Poucher's jaw and, thus, aggravated or contributed to her TMJ condition. Poucher suffered from pain and soreness on the left side of her jaw before and after the recycling bin incident. Poucher testified that she was able to work full-time, to drive a car, and to go out to dinner and to movies, but she had to do certain things (like chewing) differently after the recycling bin incident.
In 1995, Dr. Gaskins prescribed a soft bite guard (similar to a football player's mouthpiece) to treat Poucher's left-sided muscle soreness (from clinching and grinding of the teeth at night) and to treat her flare-ups and left-sided TMJ. The witness thought the grinding of teeth was related to work stress. He agreed there is nothing in his medical records indicating that Poucher's muscle spasms worsened after the recycling bin incident. Because the soft bite guard was not accurately treating Poucher's left-sided mouth muscle spasms or the tightening in her neck and shoulders, it became necessary in 1996 for her to wear a harder acrylic bite guard with a "ramp." That switch from a soft appliance to a hard one is evidence that Poucher's TMJ condition was progressive and worsening. Since 2000, Poucher's bite guards have been adjusted periodically, sometimes monthly or seasonally.
Many of the same treatments were prescribed to Poucher before and after the recycling bin incident. Her doctors recommended a soft diet, small portions of food, anti-inflammatory medications, and a bite guard. They discouraged singing and excessive talking. After the recycling bin incident, Poucher needed more frequent adjustments to her bite guard, her dentist had to use smaller instruments (typically used with children) to perform the procedures, and her dental appointments lasted longer. The 10% permanent impairment rating given to Poucher by Dr. Hartley is based on her limited mouth opening. Her mouth opening was never measured before the recycling bin incident. If Poucher's limited mouth opening pre-existed the recycling bin incident, then the 10% impairment rating could have been based on Poucher's total condition and could have included any combination of her progressive TMJ condition, the injury from the recycling bin incident, and the injury from her fall. Poucher and both of her medical providers testified that she did not intend to undergo certain available non-surgical stretching procedures or surgery to treat her TMJ condition.
In summary, the jury's zero award for future medical expenses is legally consistent with the evidence indicating that Poucher had been treated for a TMJ condition for 10 years; that her TMJ condition was progressively worsening; that the condition had required extensive medical treatment and would continue to necessitate *873 treatment in the future; and that any future costs of medical treatment would be the result of either her TMJ condition or her fall, and not the result of the recycling bin incident. See Barberena v. Gonzalez, 706 So.2d 60 (Fla. 3d DCA 1998) (finding that personal-injury plaintiffs were not entitled to additur and/or new trial on ground that jury found permanent injury but refused to award future medical expenses or future pain and suffering, where need for award of future medical expenses and pain and suffering was disputed by parties' experts). In other words, the jury could have concluded that Poucher either was never seriously injured during the recycling bin incident or had completely recovered from any injuries sustained then. Additionally, the jury's award of one-half of Poucher's claim for past medical damages is legally consistent with the evidence supporting a reasonable conclusion that only one-half of her past medical expenses arose from her recycling bin incident injuries. For purposes of our review of the order granting an additur, it is legally irrelevant that other expert and lay evidence, if believed by the jury, could support a different award.
Given the evidence supporting the jury's verdict, we find it was error to set aside the verdict in part and enter an additur. We REVERSE the order granting additur and REMAND with instructions to reinstate the jury's verdict.
KAHN and VAN NORTWICK, JJ., concur.
NOTES
[1] The notice of appeal styled the appellant Republic Services of Florida, L.P., whereas the initial and reply briefs state the name as Republic Services of South Florida, L.P.