1 So.3d 195 (2008)
HI-SHEAR TECHNOLOGY CORPORATION, Appellant/Cross-Appellee,
v.
UNITED SPACE ALLIANCE, LLC, et al., Appellee/Cross-Appellant.
No. 5D06-2242.
District Court of Appeal of Florida, Fifth District.
November 14, 2008.
Rehearing Denied February 3, 2009.
*197 Donald E. Christopher, David G. Lerner of Litchford & Christopher, Orlando, and Michael H. Kahn of Michael H. Kahn, P.A., Melbourne, for Appellant/Cross-Appellee.
Michael R. Levin, Christa C. Werder, Julie E. Singer, Robert W. Thielhelm, Jr., of Baker & Hostetler LLP, Orlando, for Appellee/Cross-Appellant.
COHEN, J.
Appellant, Hi-Shear Technology Corporation (hereinafter "Hi-Shear"), appeals various rulings made during a nine-week trial, primarily the partial denial of its motion for directed verdict on the Hobbs Act affirmative defense asserted by Appellee, United Space Alliance, LLC (hereinafter "United Space"). United Space cross-appeals the trial court's ruling partially directing a verdict on its Hobbs Act defense. We affirm on all issues.
United Space is the general contractor *198 and overall administrator of NASA's[1] space shuttle program. Prior to May 2000, Hi-Shear had a longstanding relationship as a supplier of parts for use on the space shuttle. Over the years, Hi-Shear supplied forward separation bolts, aft separation bolts, and reefing line cutters or delay cutter assemblies. The forward and aft separation bolts serve the dual purpose of connecting and separating the solid rocket boosters from the external fuel tank. After the solid rocket boosters separate, the reefing line cutters regulate the deployment of its parachutes by releasing the bindings holding the parachutes on a timed, staged basis. At the heart of the instant dispute is United Space's termination of two aft separation bolt contracts, a forward separation bolt contract, and a reefing line cutter contract.
In 1999, United Space solicited Hi-Shear to submit a bid on a contract to supply bonnet thrusters. Of the three bidders, Hi-Shear's bid was the lowest. However, due to deficiencies in its quality plan, a quality hold was placed on Hi-Shear that rendered it ineligible to be awarded the contract. United Space subsequently amended the solicitation and Hi-Shear once again submitted a bid. This time it was eligible to be awarded the bonnet thruster contract because it had cleared the issues resulting in the quality hold. Although Hi-Shear was once again the low bidder, United Space did not immediately award it the bonnet thruster contract.
Anxious to receive the bonnet thruster contract and repair deteriorating relations between the companies due to problems incurred in producing the reefing line cutters, Hi-Shear, through its vice president Herb Salit, sent a letter promising an accelerated delivery of reefing line cutters if United Space awarded it the bonnet thruster contract. This request was renewed at a meeting attended by Herb Salit and United Space's deputy director of procurement, James Donald Herring, in January 2000, to discuss the delay in producing the reefing line cutters and their subsequent delivery. At this meeting Herring also informed Salit of United Space's critical need for the reefing line cutters.
United Space rejected Hi-Shear's conditional offer of accelerated performance. Instead, it sent an open work authorization that authorized Hi-Shear to send the reefing line cutters before they were certified for use on the space shuttle. However, Hi-Shear was reticent to send uncertified reefing line cutters because it did not believe that the parties' relationship supported taking such action. Although citing prior problems with sending uncertified product, it appears that Hi-Shear's primary concern was a rumor that United Space was looking at other suppliers for the separation bolts. Before agreeing to send uncertified reefing line cutters, Hi-Shear wanted an assurance that United Space intended to continue their relationship. This assurance came in the form of awarding it the bonnet thruster contract. While seeking the award of the bonnet thruster contract, Hi-Shear put a hold on delivering completed reefing line cutters and aft separation bolts.
Alarmed by what it perceived to be Hi-Shear's attempt to condition its contractual duty to deliver reefing line cutters on the award of the bonnet thruster contract, United Space reported this behavior to NASA's inspector general. As a result, special agent Joseph Schopper was assigned to the case and began a criminal investigation. The parties subsequently met on April 6, 2000, and Hi-Shear indicated that it would deliver the reefing line *199 cutters and aft separation bolts if United Space would award it the bonnet thruster contract and execute a non-disclosure agreement. At the direction of special agent Schopper, United Space executed both of these documents and delivered them to Hi-Shear on the same date.
One day after being formally awarded the bonnet thruster contract; Hi-Shear released the hold and delivered the completed aft separation bolts. A few days later the reefing line cutters were delivered. After Hi-Shear delivered the reefing line cutters, United Space terminated the aft separation bolt contracts, forward separation bolt contract, reefing line cutter contract, and disclaimed the validity of the bonnet thruster contract and non-disclosure agreement. The reason for the terminations was that Hi-Shear violated federal law, thereby breaching the contracts, by "conditioning the delivery of products upon the issuance of a purchase order for unrelated work." United Space disclaimed the bonnet thruster contract and the non-disclosure agreement on the ground of duress.
In response, Hi-Shear filed a nine-count complaint seeking damages for breach of the contracts, fraud in the inducement, theft and misappropriation of trade secrets, and declaratory relief. United Space's principal defense was that Hi-Shear violated the Hobbs Act, 18 U.S.C. § 1951. United Space also filed a counterclaim for breach of contract, conversion, declaratory relief, and an accounting. Over the course of nine weeks the case was presented to a jury. After United Space rested, Hi-Shear moved for a directed verdict on its Hobbs Act defense. The trial court granted the motion for directed verdict as to the forward separation bolt contract, but denied it as to the aft separation bolt contracts and reefing line cutter contract.
The jury awarded Hi-Shear damages in the sum of $57,781 on its claim for breach of the forward separation bolt contract. However, the jury found that Hi-Shear violated the Hobbs Act in connection with the aft separation bolt contracts and reefing line cutter contract. It also found that Hi-Shear procured the bonnet thruster contract by duress. The jury awarded nothing to United Space on its counterclaim. The trial court entered a final judgment on May 19, 2006. Subsequently, Hi-Shear moved to amend the final judgment to include an award of pre-judgment interest and correct the post-judgment interest rate. The trial court denied Hi-Shear's request to award pre-judgment interest, but corrected the post-judgment interest rate and entered a corrected final judgment on March 23, 2007. The parties timely filed their notices of appeal and cross-appeal, which we now address.

I.
The primary issue to be addressed is the trial court's ruling on Hi-Shear's motion for directed verdict on United Space's Hobbs Act affirmative defense. Before reaching this issue, we briefly address United Space's cross-appeal and a number of arguments raised by Hi-Shear.
United Space argues, in its cross-appeal, that the trial court erred in granting the motion for directed verdict as to the forward separation bolt contract. The trial court concluded the Hobbs Act did not apply because there was no nexus between the alleged extortion and the performance of the forward separation bolt contract. After reviewing the record evidence, we do not find the trial court erred and affirm.
Hi-Shear challenges the jury instructions and exclusion of certain evidence it believed was relevant to rebut the Hobbs *200 Act defense. Having failed to show that the trial court abused its discretion, we affirm. The trial court also did not err in directing a verdict against Hi-Shear on its claim that it was fraudulently induced to enter into the bonnet thruster contract because Hi-Shear failed to prove it suffered any damages, separate and apart from the alleged breach of contract, as a result of the alleged fraud. See La Pesca Grande Charters, Inc. v. Moran, 704 So.2d 710, 713 (Fla. 5th DCA 1998).
Assuming, without conceding, that the jury correctly found that it violated the Hobbs Act, Hi-Shear contends the trial court should have ordered United Space to pay for the goods it undisputedly delivered, but United Space never paid for. Stated differently, Hi-Shear argues that it is owed, at the contracts' order price, for the goods it delivered and United Space accepted, but did not pay for. Although realizing it did not specifically plead for these damages, Hi-Shear asserts they could have been awarded as part of its declaratory judgment action.
The parties' contracts contained two clauses dealing with termination. If a contract was terminated for default due to non-performance, then any goods delivered and accepted were required to be paid at the contract's order price. If a contract was not terminated for default, but rather at United Space's convenience, then the parties could either agree on the amount to be paid or the amount would be calculated as provided in the contract. The contract provided for payment, calculated as follows: 1) completed supplies or services accepted by United Space; plus 2) the cost of the work, including initial costs and preparatory expenses, the cost of settling and paying claims arising out of the termination for convenience to subcontractors, and a sum for profit calculated under the Federal Acquisition Regulations; plus 3) the reasonable costs of settlement. If it was determined that United Space wrongfully terminated for default, then damages would also be calculated under a termination for convenience.
At trial, the issue presented to the jury was whether the Hobbs Act was violated such that it justified United Space's termination for default. If not, then Hi-Shear was entitled to damages based on a termination for convenience. As Hi-Shear conceded at oral argument, its entitlement to termination for convenience damages was the only theory of damages presented to the jury. It did not plead for termination for default damages under its breach of contract counts. Although it could have been awarded these damages as part of its request for declaratory judgment, Hi-Shear neither pled for these damages nor sought supplemental relief pursuant to section 86.061, Florida Statutes (2000). In fact, the first time Hi-Shear raised this issue was in a motion to amend its motion for new trial. Hi-Shear waived its right to seek damages for the goods it delivered, but were not paid for, by failing to raise this issue before the trial court. See Parlier v. Eagle-Picher Indus., Inc., 622 So.2d 479 (Fla. 5th DCA 1993).

II.
Hi-Shear contends the trial court erred in denying its motion for directed verdict on the Hobbs Act as to the aft separation bolt contracts and reefing line cutter contract. When reviewing a ruling on the motion for directed verdict, this court reviews "the evidence adduced and every conclusion therefrom in the light most favorable to the nonmoving party, resolving every conflict and inference for that party." Reams v. Vaughn, 435 So.2d 879, 880 (Fla. 5th DCA 1983). If there are conflicts in the evidence or different reasonable inferences could be drawn from *201 the evidence, the issue is a factual one that should be submitted to the jury. Tenny v. Allen, 858 So.2d 1192, 1196 (Fla. 5th DCA 2003). A directed verdict is properly entered if "no view of the evidence could sustain a verdict" against the nonmoving party. Id. at 1195.

Hobbs Act
The Hobbs Act is codified at 18 U.S.C. § 1951 and, in relevant part, prohibits obstructing, delaying, or affecting interstate commerce by robbery or extortion. Extortion is defined as "obtaining property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). To prove a Hobbs Act violation the following elements must be proven: 1) the victim was wrongfully induced to part with property; 2) through fear; and 3) an adverse affect on interstate commerce. U.S. v. Addonizio, 451 F.2d 49, 59 (3d Cir.1971). The interstate commerce element will not be addressed because the parties do not argue that this element was not proven.
Wrongful inducement occurs when the extorting party exploits a victim's fear in order to obtain property to which she is not entitled, nor has a lawful claim. Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 523 (3d Cir.1998); Viacom Int'l Inc. v. Icahn, 747 F.Supp. 205, 210 (S.D.N.Y.1990). The means used to accomplish the wrongful inducement need not be unlawful in themselves. Otherwise lawful business activity can become wrongful when it is used to obtain property that the party has no lawful claim to. Viacom Int'l Inc. v. Icahn, 747 F.Supp. at 211-12. Furthermore, exploiting economic fear in arms length business negotiations is not inherently wrongful, and therefore, will not always rise to the level of extortion. Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d at 523. It is only when the extorting party has no lawful claim to the property obtained that a Hobbs Act violation occurs. Id.
The "fear" element encompasses both physical harm and economic loss. U.S. v. Addonizio, 451 F.2d at 72. When extorting through the wrongful use of fear of economic loss, the victim must reasonably fear economic loss. U.S. v. Middlemiss, 217 F.3d 112, 118 (2d Cir.2000); Viacom Int'l Inc. v. Icahn, 747 F.Supp. at 211. The proof must show that the extorting party both had the power to harm the victim and would exploit that power to the victim's detriment. Id. Fear under the Hobbs Act can include non-repayment of a loan, U.S. v. Sturm, 870 F.2d 769, 772 (1st Cir.1989), or harm to business operations based on the public perception of an imminent threat of a corporate takeover, Viacom Int'l Inc. v. Icahn, 747 F.Supp. at 211. The requisite fear is not shown where the only fear is the loss associated with non-compliance or non-payment of a contract. Robert Suris Gen. Contractor Corp. v. New Metro. Fed. Sav. & Loan Ass'n, 873 F.2d 1401, 1405 (11th Cir.1989).
"Property" under the Hobbs Act is not limited only to physical or tangible property. U.S. v. Tropiano, 418 F.2d 1069, 1075 (2d Cir.1969). It includes any valuable right that is considered to be a source or element of wealth. Id. Thus, it encompasses the right to make business decisions free from wrongfully imposed external pressure, U.S. v. Santoni, 585 F.2d 667, 673 (4th Cir.1978), business accounts and unrealized profits, U.S. v. Nadaline, 471 F.2d 340, 344 (5th Cir.1973), and the right to pursue a lawful business, U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc., 793 F.Supp. 1114, 1134 (E.D.N.Y.1992).
*202 United Space's Hobbs Act defense was predicated on the theory that Hi-Shear exploited its fear that it would not receive the critically needed separation bolts and reefing line cutters unless it awarded Hi-Shear the bonnet thruster contract. Hi-Shear advances a number of arguments for why its actions were not extortionate as a matter of law. The issues dispositive to the instant appeal are whether Hi-Shear had a legal entitlement to the bonnet thruster contract or its actions were merely non-actionable hard-bargaining.

Hi-Shear's Entitlement to the Bonnet Thruster Contract
There are two generally accepted scenarios when a party obtains property to which she is not entitled. The first is when the victim parts with her property and receives nothing of value in return. Viacom Int'l Inc. v. Icahn, 747 F.Supp. at 212. The second is when the victim parts with her property in exchange for something the victim values. Id. at 212-13. In this latter situation, some acts will be extortionate and others non-actionable hard-bargaining. Id. at 213. The distinction between the two rests on whether the victim has a pre-existing right to pursue her business interests free of the fear being suppressed by receiving something of value in exchange for her property. Id. If the victim has a pre-existing right to pursue her business interests free of the fear, then extortion occurs. Id. If the victim does not have a pre-existing right, then it is hard-bargaining. Id.
Hi-Shear contends that it cannot be found to have committed Hobbs Act extortion because it offered valuable consideration for the bonnet thruster contract: promising to expedite the preparation and delivery of the reefing line cutters. However, as Hi-Shear's own president testified, United Space rejected this offer. Subsequently, United Space sent an open work authorization requesting Hi-Shear send reefing line cutters without the required certifications by March 20, 2000. Hi-Shear refused this request because it wanted further assurances that United Space would continue to use it as a supplier. In furtherance of this goal, Hi-Shear continued to seek the award of the bonnet thruster contract. This persistence culminated in the meeting on April 6, 2000, attended by Herring, United Space's deputy director of procurement, and Salit, Hi-Shear's vice-president.
At this meeting, United Space expressed its need for the aft separation bolts and reefing line cutters. Herring asked Salit, "The only way I can get that hardware is to place a purchase order with you for the bonnet thrusters, I'm prepared to do that. Is that still your position?" Salit responded, "Yes, it is." In addition to requiring an award of the bonnet thruster contract before it would ship the reefing line cutters and aft separation bolts, Hi-Shear also demanded that a non-disclosure agreement be signed. United Space subsequently awarded the bonnet thruster contract to Hi-Shear and signed the non-disclosure agreement. Based on United Space's rejection of Hi-Shear's offer of accelerated performance, the jury could have concluded that Hi-Shear did not offer any consideration in exchange for the bonnet thruster contract. Thus, the jury could have determined that Hi-Shear was unlawfully conditioning the delivery of the aft separation bolts and reefing line cutters on being awarded the bonnet thruster contract.
Even if the record evidence only showed that Hi-Shear offered to expedite the delivery of the reefing line cutters as consideration for the bonnet thruster contract, this still does not mandate a finding that United Space received valuable consideration. This is because under the terms *203 and conditions of the reefing line cutter contract, United Space had the unilateral right to change the "method or manner of performance" and the "schedule of performance" of the work. Thus, the jury could have concluded that United Space had a contractual right to demand accelerated performance and properly did so when it sent the open work authorization. Consequently, the jury could have found that the consideration offered by Hi-Shear was nothing more than what United Space was already contractually obligated to demand and receive. In any event, whether Hi-Shear offered valuable consideration required resolving evidentiary conflicts that precluded the entry of a directed verdict in favor of Hi-Shear. See Alpha Elec. Supply, Inc. v. Drake Contracting, Inc., 407 So.2d 363 (Fla. 5th DCA 1981) (reversing summary judgment where there was a disputed issue of fact as to whether an agreement was supported by consideration).
Assuming arguendo that United Space received valuable consideration in return for the bonnet thruster contract, this still does not mandate a conclusion of hard-bargaining. Hi-Shear contends that its actions were nothing more than hard-bargaining because, as the lowest bidder, it was legally entitled to be awarded the bonnet thruster contract. According to Hi-Shear, United Space's procurement officials duly selected it as the most qualified bidder in the normal course of business without knowledge of the alleged extortionate behavior.
Contrary to Hi-Shear's argument, the fact that it was the lowest bidder did not entitle it to the bonnet thruster contract. The undisputed testimony at trial was that United Space was not obligated to award the bonnet thruster contract based solely on the lowest bid. Rather, it was considered along with other factors, such as past performance. As United Space's representative testified, it would have been "very difficult" to award Hi-Shear the bonnet thruster contract because of its past problems with delivering the separation bolts and reefing line cutters. Rather than entitlement, Hi-Shear had nothing more than an expectation or hope of being awarded the contract.
The fact that United Space's procurement officials did not know of Hi-Shear's extortionate behavior is irrelevant because these officials did not have the authority to award the contract. The person who had authority to award the bonnet thruster contract testified that he did not award it based on the competitive bidding process. Instead, it was awarded based on Hi-Shear's extortionate behavior.

III.
Hi-Shear argues that the damages awarded on its breach of the forward separation bolt contract was not supported by the evidence. Hi-Shear complains that the jury awarded it the amount due under its unpaid invoice and not the amount identified by its expert witness. According to Hi-Shear, United Space did not present any evidence to rebut its expert witness and, thus, it was the only evidence upon which the jury could award damages. The fatal flaw with this argument is that Hi-Shear was asked in an interrogatory to state the amount of damages it sustained as a result of the breach of the forward separation bolt contract. The amount it identified was the exact amount the jury awarded. This interrogatory answer was presented to the jury without objection. Because interrogatory answers are admissible into evidence, Alexander v. Alterman Transport Lines, Inc., 387 So.2d 422, 424 (Fla. 1st DCA 1980), and the jury was entitled to reject Hi-Shear's expert testimony on damages, Republic Services of *204 Florida, L.P. v. Poucher, 851 So.2d 866, 871 (Fla. 1st DCA 2003), the jury's damages award is supported by record evidence and therefore, will not be set aside. See Thompson v. Jacobs, 314 So.2d 797, 798 (Fla. 1st DCA 1975).
Finally, Hi-Shear challenges the trial court's refusal to award it pre-judgment interest. Hi-Shear first raised its entitlement to pre-judgment interest in a motion to correct the final judgment, nunc pro tunc, filed over nine months after the final judgment was entered. By failing to raise this issue in a motion for rehearing within the time set forth in Florida Rule of Civil Procedure 1.530(b), Hi-Shear waived its claim to pre-judgment interest. See Emerald Coast Commc'ns, Inc. v. Carter, 780 So.2d 968, 970 (Fla. 1st DCA 2001).
AFFIRM.
ORFINGER, J., concurs.
TORPY, J, dissents, with opinion.
TORPY, J., dissenting.
When the smoke cleared here, United got the product it contracted for but avoided payment by its creative assertion of the Hobbs Act as a defense to payment. A federal investigator authorized United's employees to play along with the purported extortionate demand while under audio surveillance. After the threat had been documented in a tape recording, United waited until the cutters were shipped before terminating the contracts and refusing even to pay for delivered and accepted product. Most troublesome to me is United's contention that Hi-Shear placed it in "fear," despite United's superior size and economic strength and despite the fact that it did not succumb to the threat but instead reported it to authorities. United successfully presented testimony that Hi-Shear's threats of non-performance caused it fear of great economic loss because the product was integral to the space shuttle and unavailable from other sources. Because I believe threatened non-performance of a contract is not the type of threat that Congress intended to criminalize under the Hobbs Act, I would reverse.
As defined in the Hobbs Act, "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right. Here, there were no threats of force or violence, leaving only the issue of whether Hi-Shear wrongfully put United in fear in an attempt to obtain the bonnet thruster contract.[1] The "obtaining property" element is entirely distinct from the "putting in fear" element. The former focuses on what the violator got or tried to get. The latter focuses on what the victim feared it would lose if it did not succumb to the demand. By awarding a sole-source contract to Hi-Shear for specially fabricated goods, United assumed the contractual risk that Hi-Shear would not perform and its non-performance would delay the project. The threatened breach, even when used as leverage to exact additional consideration, did not exacerbate this contractual risk. Therefore, it was not the type of threat that gives rise to a Hobbs Act violation, as is illustrated by Robert Suris General Contractor Corp. v. New Metropolitan Federal Savings & Loan Ass'n, 873 F.2d 1401, 1405 (11th Cir.1989). There, the plaintiff, a contractor, was induced to accept loans from affiliates of the project's owner based upon fear of non-payment for work done on the project. In affirming the grant of summary judgment for the defendants, the court held that the plaintiff *205 had not established a Hobbs Act claim because: "The only fear of economic loss is that which accompanies any party to a contract when he suspects that compliance and compensation may not be forthcoming." Id.
In my view, this case is analogous to a construction contract scenario wherein a subcontractor threatens non-performance to leverage an additive change order or a contractor threatens non-payment to coerce a subcontractor to perform extra work. To label this type of hardball tactic between businesses criminal extortion stretches the law dangerously beyond what Congress intended. See United States v. Albertson, 971 F.Supp. 837, 841 (D.Del.1997) (principal purpose of Hobbs Act was to outlaw "gangland thuggery and its influence within labor unions").
I would reverse.
NOTES
[1] NASA is also known as the National Aeronautics and Space Administration.
[1] I say "put in fear" because one cannot "use" fear. Fear is a reaction. This is apparently the way the courts have construed this language.