[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13051

Non-Argument Calendar

_____

RAINA M. RICKS,

Plaintiff-Appellant,

versus

INDYNE, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:18-cv-02171-RV-HTC

_____

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR and BRASHER, Circuit Judges.

PER CURIAM:

Raina Ricks appeals the summary judgment in favor of her former employer, InDyne, Inc., and against her complaint of a hostile work environment based on her sex and of retaliation for filing a charge of discrimination in violation of the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10. Ricks does not appeal the summary judgment against her claim of race discrimination in her termination. See Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012). The district court ruled that a few, sporadic incidents of sexual harassment by Ricks's coworker did not create a hostile work environment. The district court also ruled that Ricks failed to temporally connect her termination and her charge of discrimination, and, in the alternative, that she failed to establish that her termination for excessive tardiness was a pretext for retaliation. We affirm.

## I. BACKGROUND

In May 2013, after working four years for InDyne as a personnel assistant in its human resources department, Ricks reported to management that coworker Cindi Wood was misusing her company credit card and submitting false mileage reports. Ricks thought that Wood and their supervisor, Jerry Johnson, resented her.

In April 2014, Ricks's tardiness became an issue. Two months earlier, over Ricks's objections, her department instituted an alternative work schedule in which employees arrived at 7:00 a.m., worked nine hours Monday through Thursday, eight hours on Friday, and were off every other Friday. On April 16, Johnson confronted Ricks about leaving early and reminded her "to adhere to [the] new AWS schedules." On April 21, Johnson called Ricks into his office to discuss her schedule, but after he remarked she "rare[ly]" adhered to her adjusted arrival time of 7:30 a.m., she left their meeting, ignored his requests to return to his office and his efforts to console her, and departed work by 9:00 a.m. The next day, Ricks met with Johnson and his supervisor, Harry Schubele, and objected to her work schedule and with what she perceived as being targeted based on her race. After Johnson reprimanded and "got agitated with" Ricks, she agreed to abide by her schedule. Ricks also contacted Michael Guidry, the Contract Manager, who responded that Johnson had poor people skills but had not targeted or discriminated against Ricks.

On June 9, 2014, James Humbarger, who worked in the technical services division, visited Ricks at her desk. Humbarger's voice was louder than usual as he described his weekend, he "said several curse words . . . just in conversation," and he used two lewd words. "He also made a racial comment concerning the texture of the skin on [Ricks's] hands asking if 'it was a black thing'" and re-marked on the color she dyed her hair that, "Only black and His-panic women do that, white girls don't do that." "Before

[Humbarger] started to leave he leaned in to hug [Ricks] and tried to kiss [her]," and when she avoided his advances, he said, "You and me should hook up." After Wood reported the incident to Johnson, he asked Ricks, "What was w[ith] Humbarger today?" Ricks responded that she "didn't know" and griped that, "when people want to vent and talk to me about their issues it doesn't help that I'm out in the open so everyone can hear what is said." Johnson offered to speak to Humbarger's supervisor and "to stop a conversation that was getting weird . . . [if] she . . . just wave[d] in his office . . . ."

Humbarger and Ricks had other interaction at work. On one occasion, while Humbarger, Ricks, and Lauren Day, an administrative assistant, were talking, Day suggested that Humbarger introduce his son to Ricks, and Humbarger responded, "She's mine" or "I want her to be mine." After Ricks "giggled," Day left Humbarger's office. Ricks later texted Day that Humbarger made her uncomfortable and had tried to kiss her, but Day decided that if Ricks "was uncomfortable, she would have reported it." In September 2016, Humbarger made "an inappropriate comment [to Ricks] about trading [her] in for his wife."

Ricks, who had begun therapy for work-related stress, began "getting upset and having to leave" work. Her behavior caused Day in October 2014 to tell Guidry that there was "an issue between [Humbarger] and [Ricks]," which surprised Guidry. A few months later, Humbarger was put on a performance improvement plan. When he failed to comply and an internal investigation

confirmed that Humbarger had been coming to work intoxicated, InDyne fired him.

Meanwhile, in November 2014, Ricks filed a charge of discrimination with the Equal Employment Opportunity Commission. Ricks alleged that she had been "targeted" for termination because she opposed the alternative work schedule and had reported Wood's misconduct to management. Ricks also alleged that "Humbarger made multiple inappropriate racist and sexual comments" on unspecified occasions by asking Ricks to "hook up," "ask[ing] [her] to sit on his lap and 'and let [him] feel [her] rear end,'" and stating that anyone working in the office "would love to have sex with [him]."

In early 2015, Humbarger visited Ricks's "confidant" at work, Georgianna Nance. Humbarger "wreak[ed]" of alcohol and was distraught about his drinking and family issues. Later that day, Johnson and Guidry spoke with Nance about Humbarger because "they [had] bec[o]me aware of what was going on between him and Ms. Ricks, and his issues were starting to surface."

In February 2015, Guidry met with the human resources department to address its employees' work hours. Guidry instructed every employee to email Johnson, with a copy to Schubele, on their arrival to and before departing from the office. Ricks continued to arrive late. When Johnson asked Ricks why she was tardy between 80 and 90 percent of the time, she responded that the time reported in her morning emails was incorrect, but she offered no explanation or excuse for her failure to timely check in.

On March 19, 2015, InDyne put Ricks on a performance improvement plan to address her "excessive tardiness." The written plan instructed Ricks "[w]hen having difficulties . . . [to] be in contact with the Human Resources Manager to advise as to the delay and estimated time of arrival." The plan stated that Ricks's "progress in adhering to [her] scheduled arrival and departure times [would] continue to be monitored and be reviewed in 30 days." Ricks was warned that, unless she "immediately improve[d] and sustain[ed] [her schedule], further action [would] be taken which may include termination." Ricks refused to sign the plan.

Ricks continued to arrive late to work, but InDyne postponed any discipline. On April 23, 2015, Ricks met with Johnson and Schubele about a 30-day follow up plan. That plan charted how Ricks "continu[ed] to be . . . late 50% of the time" and provided "another 30 day period . . . to monitor [her] reporting" of "start and end emails . . . ." The follow up plan contained the same warning as the original plan if she failed to "immediately improve[] and sustain . . . performance." Ricks also refused to sign the follow up plan.

On May 4, 2015, after Guidry saw Ricks arrive late to work, he fired her. Guidry composed a letter that described Ricks's history of tardiness in 2012 and 2014 and her noncompliance with the performance plan in 2015. Guidry stated that Ricks was "terminate[d] . . . effective immediately" because, "[d]espite our efforts to work with you on a schedule that meets your needs (start time at 7:30 AM rather than the standard 7:00 AM schedule) and the repeated attempts to stress the importance of reporting to work on-

time, [she] continue[d] to exhibit 'excessive absenteeism' as defined in the employee handbook . . . ." The employee handbook stated that "punctuality [is] critical to quality of service, productivity, and morale" and that "[c]hronic or excessive . . . tardiness will be cause for corrective action up to, and including, termination of employment."

Ricks filed a complaint against InDyne in state court, which the company removed to federal court, 28 U.S.C. § 1332(a). When InDyne deposed Ricks, she acknowledged that her check-in emails were often late because "people would meet [her] at [her] desk or be waiting there to be helped" or because her computer was downloading updates or had to be rebooted. Ricks stated she never mentioned the delays to Johnson or Schubele "because they should have thought of" the problems she encountered. Ricks stated that "[t]hey said they wanted an e-mail, so they got an e-mail" and she never was "asked to put the actual time [she] arrived" in the email, although she did so "if it was like later on in the day and [she] was busy . . . ." And Ricks confirmed that she never tried to explain her tardiness.

> Q They did tell you you had an 80 percent tardiness rate, you had a 90 percent tardiness rate, they did tell you that; isn't that correct?
>
> A But telling me that doesn't make it true.
>
> Q They did tell you that; isn't that correct?
>
> A Yes.

Q So when they told you that, and you're saying it wasn't true, did you explain to them what the situation was that you were giving them bad input?

A It wasn't bad input, it was the input that they required. So no, I did not.

InDyne moved for summary judgment, which the district court granted. The district court ruled that Ricks failed to establish a prima facie case of retaliation "as there was a six month gap between the statutorily protected expression (the filing of her first EEOC charge on November 4, 2014) and the adverse action (her termination on May 4, 2015)." Alternatively, the district court ruled that InDyne "discharged its intermediate burden" of establishing it fired Ricks for excessive tardiness and that she failed to prove the reason was false and "that retaliation for filing the EEOC charge was the true reason" she was fired. The district court also ruled that Ricks's claim of a hostile work environment failed because "Humbarger's conduct appears to have been infrequent and . . . not so severe as to alter the term of [Ricks's] working conditions . . . ."

## II. STANDARD OF REVIEW

We review a summary judgment *de novo* and view the evidence in Ricks's favor. *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 832 (11th Cir. 2021). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### III. DISCUSSION

Ricks challenges the judgment against her claims of a hostile work environment at and of retaliation by InDyne. Ricks argues that a triable issue exists as to whether Humbarger's harassment created a discriminatorily abusive working environment. Ricks also argues that her evidence of being fired in retaliation for filing a charge of discrimination against InDyne survives summary judgment. Ricks's arguments fail.

Ricks sued InDyne for violating the Florida Civil Rights Act, which prohibits discrimination against any person with respect to her "terms, conditions or privileges of employment, because of [her] race, color, . . . [or] sex," Fla. Stat. § 760.10(1)(a), or in retaliation for making a charge of discrimination, *id.* § 760.10(7). The Act makes sexual harassment actionable as a "form of sex discrimination." *Maldonado v. Publix Supermarkets*, 939 So. 2d 290, 293 (Fla. Dist. Ct. App. 2006). Because the Act is patterned after Title VII, decisions construing Title VII apply to claims brought under the Act. *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020); *Palm Beach Cnty. Sch. Bd. v. Wright*, 217 So. 3d 163, 165 (Fla. Dist. Ct. App. 2017).

The district court did not err by entering summary judgment in favor of InDyne and against Ricks's complaint of a hostile work environment. Ricks failed to prove that Humbarger's harassment amounted to "discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working

environment." *Tonkyro*, 995 F.3d at 836–37 (quoting *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)). "Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). Ricks did not report Humbarger's harassment to superiors and dismissed her supervisor's offer to intervene. But even if Ricks perceived his harassment as subjectively intolerable, Humbarger did not engage in the type of "extensive, long lasting, unredressed, and uninhibited sexual threats or conduct" that an objective person would consider to be severe or pervasive. *See Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000) (quoting *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (5th Cir. 1999)), *overruled on other grounds as recognized by Crawford v. Carroll*, 529 F.3d 961, 973–74 (11th Cir. 2008). Humbarger's advances were infrequent. And Humbarger's offensive comments and vulgar behavior lacked the severity or pervasiveness necessary to amount to actionable sexual harassment.

The district court also correctly entered summary judgment against Ricks's complaint of retaliation. That InDyne fired Ricks six months after she filed her charge of discrimination was too protracted to causally connect the adverse employment action to her protected activity. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). And even if we assume that Ricks had established a prima facie case of retaliation in violation of the Florida Civil Rights Act, Fla. Stat. § 760.10(7), InDyne provided a

legitimate, nonretaliatory reason for Ricks's termination, *see Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). InDyne established that Ricks was fired for excessive tardiness. Ricks failed to "meet [that proffered reason] head on and rebut it." *See Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004)). Ricks admitted that she was occasionally late, that she failed to electronically clock in or was late doing so, and that she never attempted to refute that she was late 80 to 90 percent of the time. Because Ricks failed to produce evidence of causation or of pretext, Ricks's complaint of retaliation failed as a matter of law.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of InDyne.